## H. HEYWARD ISHAM

### *v.*

## LOUIS F. THERASSON et al.

1. W., the holder of a mortgage upon the lands of T., delivered to T. a writen memorandum as follows: "I agree with you to assign your * * * mortgage * * * to any party you may desire, in consideration of receiving from you or them the sum of $250. * * * I do this in consideration of the taxes, assessments and charges you have already paid and now due on the property."

2. The administrator of W. repeatedly called upon T. to pay the $250 and take an assignment of the mortgage. T. expressed a willingness to do so, but failed to produce the money. After T. had had ample opportunity to pay the money and take the assignment, the administrator assigned the mortgage to I., who brought suit to foreclose it. Thereupon T. tendered I. $250 and demanded an assignment of the mortgage.—*Held,* that the memorandum, regarded as a *promise* to assign, was not supported by valuable consideration, and that, regarded as an *offer* to assign, it was so conditioned that the only binding acceptance of the offer was the payment or tender of the $250, and that, as the offer was voluntary, it could be withdrawn at any time before acceptance as aforesaid.

On bill to foreclose mortgage, answer, replication and proofs.

On the 2d day of April, 1855, Louis F. Therasson, who is a lawyer in the city of New York, in order to secure the payment of part of the purchase-money for certain lands in the city of Elizabeth, which Job Winans then conveyed to him, delivered to Winans his bond for $1,275, payable in two years, secured by a mortgage on the lands conveyed.  Job Winans died in August, 1872, leaving a will by which, among other things, he bequeathed the Therasson bond and mortgage to his son, Job M. Winans.

The taxes upon the mortgaged premises were paid to October, 1875.  Thereafter, neither taxes, assessments nor interest were paid.  On the 13th of October, 1891, Job M. Winans delivered to Therasson the following memorandum in writing:

"NEW YORK, October 13, 1891.

"L. F. THERASSON,
    "*Dear Sir :*—
    " I agree with you to assign your bond and mortgage for $1,275 and int. due &c., given by you to the late Job Winans and now held by me, to any party you may desire, in consideration of receiving from you or them the sum of $250.  I will execute such an assignment of said bond and mortgage as you may desire for the amount due and interest.  I do this in consideration of the taxes, assessments and charges you have already paid and now due on the property.

"Yours &c.,
"JOB M. WINANS."

With this memorandum, the bond and mortgage were confided to Therasson, so that he might the more readily negotiate their sale, he agreeing to return them upon demand.

Job M. Winans died intestate on the 4th day of November, 1891, and in the same month, letters of administration of his estate were issued to his son, Job Irving Winans.  On the 24th of the same month, the administrator, not knowing of his father's memorandum, offered the bond and mortgage to Therasson for $200.  This offer, as the answer states, was left open for a time, to enable Therasson to examine the title of the administrator to make an assignment of the bond and mortgage.  Therasson, however, failed to act in the matter, and in January, 1892, the administrator, by a messenger, demanded the return

of the bond and mortgage. Therasson refused to deliver it up. A few days later, the administrator made personal demand for the papers and was put off. Still later, he again called on Therasson, who promised that, on Monday, the 10th of February, he would take the assignment and pay the $200. When the 10th of February arrived, Therasson failed to meet the administrator, as arranged, and the next day, by letter, excused his failure to appear by an allegation of illness, expressing his belief that he would have some one take the assignment on the following Monday. To this latter, the administrator replied that he had made arrangements for the transfer of the mortgage to other parties.

On the 15th of February, 1892, Therasson first apprised the administrator of the existence of the memorandum of Job M. Winans, and notified him that he had a party ready to take the assignment and pay the $250 contemplated in that memorandum, and asked that he be notified when the assignment would be ready. The administrator asked to see the memorandum, and, after some delay, was allowed to take a copy of it. Upon being satisfied that it was his father's promise, he declared that he "would have to" carry it out, and later, on March 9th, he wrote to Therasson that he would attend at Therasson's office on the 14th of that month, at an hour named, to make the assignment, and notified Therasson that the matter must then be consummated or he would be obliged to make arrangements with other parties. To this communication Therasson replied on the 12th of March, pleading engagements for the 14th, and promising that, during the following week, he would examine the administrator's title and arrange with the administrator's lawyer to close the matter. After waiting until the 22d of March, without hearing from Therasson, the administrator assigned the mortgage to the complainant.

The defence to the complainant's suit to foreclose is, that the complainant bought the mortgage with notice of the memorandum of August 13th, 1891, and that Therasson has tendered him $250, and the form of an assignment of the mortgage to L. Francis Therasson, Jr., and demanded that he take the money,

Isham *v.* Therasson.

and execute and deliver an assignment in performance of the agreement contained in that memorandum.

*Mr. Patrick H. Gilhooly,* for the complainant.

*Mr. William D. Tyndall,* for the defendants.

THE CHANCELLOR.

The questions presented by the defence are—*first,* whether, regarding the memorandum of October 13th, 1891, as a promise to assign, it is supported by valuable consideration so as to be binding; and *second,* whether, regarding it as a mere voluntary offer to assign, it was so accepted as to be binding.

The memorandum purports to have been made in consideration of previous payments; by Mr. Therasson, of taxes &c. charged on the mortgaged premises, and of the fact that at the making of the memorandum, there existed unpaid taxes encumbering the property.   To constitute a valuable consideration, which will render a promise enforceable, the promisor must thereby acquire some benefit or advantage, and the promisee, or some one for him, must, in consequence of the promise, surrender some right or suffer loss or disadvantage.   *Conover* v. *Stillwell, 5 Vr. 54.*   A mere promise to relinquish part of a debt, or, which is the same thing, to take part in discharge, or for an assignment, of the whole, is *nudum pactum* and without legal obligation. *Day* v. *Gardner, 15 Stew. Eq. 199, 201; Tulane* v. *Clifton, 2 Dick. Ch. Rep. 351; S. C. on appeal, 3 Dick. Ch. Rep. 310.*

Mr. Winans did not reap any benefit or advantage from his promise, nor did Mr. Therasson suffer any disadvantage or loss because of it.   Mr. Therasson did not pay the taxes and assessments in reliance upon the promise, nor did he suffer taxation because of it.   The reference in the memorandum to Mr. Therasson's payment of taxes and assessments, as the consideration for his promise to assign upon being paid $250, was not reference to a valuable legal consideration, but merely to matter of sympathetic inducement, as though the promisee had said—

"You have been burdened with the payment of taxes and assessments and the mortgaged lands are yet charged with taxes and assessments which have not been paid; therefore, when you pay me $250, I will assign my mortgage to you or to another whom you may procure to take it."

The promise thus made was clearly voluntary and incapable of enforcement, prior to the payment or tender of the $250.

Regarding the memorandum in the light of an offer to assign the mortgage, it is noticed that it is conditioned upon the receipt of $250. Its language, divesting it of superfluous words, is: "I agree * * * to assign * * * in consideration of receiving * * * the sum of $250." The only effective acceptance of such an offer was the payment or tender of the $250. Prior to that payment, or the legal tender of the payment—which itself would furnish valuable consideration, *Cutting* v. *Dana, 10 C. E. Gr. 265*—the whole matter rested in mere voluntary promise or offer, which was revokable at the pleasure of the promisor or his legal representatives. *Houghwout* v. *Boisaubin, 3 C. E. Gr. 315.*

It is clear that, after affording Mr. Therasson ample opportunity to avail himself of the offer by a proper acceptance, the administrator of Mr. Winans withdrew it.

Upon this consideration, I conclude that the complainant is entitled to a decree.

It appears that the successive holders of the mortgage have, at times, been in possession of the mortgaged premises upon an agreement that the value of their possession should be credited upon accruing interest, therefore it should be referred to a master to take an account upon the amount due upon the mortgage, allowing credit for the value of such possession.